IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 23, 2005 Session

## MORRIS M. DICKSON v. CITY OF MEMPHIS CIVIL SERVICE COMMISSION

**A Direct Appeal from the Chancery Court for Shelby County**
**No. CH-03-1310-1     The Honorable Walter L. Evans, Chancellor**

---

**No. W2004-02232-COA-R3-CV - Filed November 2, 2005**

---

The City of Memphis appeals from the trial court's reversal of the Civil Service Commission's decision to terminate a City employee/Appellee for violation of the substance abuse policy. The trial court found that the positive drug test, which provided the only substantial and material evidence for Appellee's termination, was inadmissible as evidence for failure of the City failed to comport with 42 U.S.C. §290. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Sara L. Hall, City Attorney; Jack L. Payne, Jr., Assistant City Attorney, For Appellant, City of Memphis Civil Service Commission

Darrell J. O'Neal of Memphis For Appellee, Morris M. Dickson

### OPINION

On March 30, 2001, Morris Dickson ("Appellee"), a Memphis firefighter, was placed on sick-leave status and voluntarily reported for professional treatment under the Employee Assistant Program ("EAP"). The EAP is a program that provides assistance and counseling to City of Memphis ("City," or "Appellant") employees with substance abuse and/or marital problems. Mr. Dickson contends that he sought treatment with the EAP due to problems in his marriage and not for any drug problems. On March 30, 2001, Mr. Dickson signed a "Treatment Plan/Assessment" (the "Treatment Plan"). This Treatment Plan reads, in pertinent part, as follows:

> I, Morris M. Dickson, understand that the following EAP treatment
> plan has been formulated upon my disorder or condition. I have

voluntarily participated in this plan with the EAP staff and agree to strictly adhere to its provisions....

\*                                        \*                                        \*

I, Morris M. Dickson, understand and agree to follow through with this plan. I also understand that a record will be maintained regarding my compliance or non-compliance and that this information can be used in my behalf or in the City's behalf in any administrative or legal proceedings or situations wherein the records are relevant to my employment, including, but not limited to, disciplinary matters , grievance and arbitration matters, Civil Service Commission appeals, court proceedings and / or Unemployment Compensation matters. I have been given a copy of the treatment plan.

Note: In cases of substance abuse, I understand that I will be terminated upon receipt of the first positive drug / alcohol screen after entrance into the follow-up treatment program.

On or about May 10, 2001, Mr. Dickson signed a "Follow-Up Substance Abuse Testing Agreement," which reads, in relevant part, as follows:

You are being placed on a **periodic** drug/alcohol-testing program. Your signature below indicates your understanding and agreement to the provisions set forth herein:

1.   To remain free of illegal drugs for the remainder of your employment with the City.

2.   To refrain from misusing alcohol for the remainder of your employment with the City.

3.  To agree to periodic drug and alcohol testing for a period of four (4) years as directed by your EAP Counselor, EAP Coordinator, the Drug-Free Workplace Manager, and/or your Division Director or designee.

4.  To immediately report for drug/alcohol testing when notified.

Provisions have been made to assure accuracy of test results. If you disagree with the first result, you may request that the Drug-Free Workplace Manager arrange for testing of the second sample of your original specimen. Such a request must be made within five (5)

-2-

working days after receiving the initial result and will be at your expense. You will not be allowed to work or to be on City property until you pass a return-to-duty test and you obtain a written release from your EAP Counselor or the Drug-Free Workplace Manager.

Confidentiality will be observed to the extent permitted by law. Should you fail to remain free of alcohol/illegal drugs, whether by test or self-admission, or should you fail to report for a screen, immediate action will be taken to protect public safety and City property interests. Resumption of alcohol misuse or drug abuse will be reported to management and will result in disciplinary action. Continued misuse of alcohol/drugs will result in the termination of employment with the City of Memphis.

**Substance abuse and employment with the City of Memphis Government are incompatible.**
**NOTE: Employees will be terminated upon receipt of the first positive drug/alcohol screen after entrance into the follow-up testing program. MMD /S/.**

**I, Morris M. Dickson /S/ have read, understand, and agree to these provisions.**

On May 10, 2001, Mr. Dickson submitted to a random drug test, which came back negative on May 15, 2001. Mr. Dickson was then discharged from the initial treatment program and returned to duty with the Division of Fire Services on May 17, 2001. As a condition of his return to duty, Mr. Dickson was to continue to be in compliance with his Treatment Plan. Mr. Dickson submitted to additional drug-screens on October 2, 2001 and October 16, 2001. Both of these screens were negative for illegal substances.

On December 6, 2001, Mr. Dickson reported for work but was not feeling well. He was asked to submit to a drug-screen, which he did. This drug screen tested positive for cocaine. Based upon the forms Mr. Dickson had signed for the EAP, *see supra*, the positive test results were released to a doctor hired by the City, to the EAP, and to the City.[1] On December 17, 2001, an administrative hearing was held at Fire Headquarters. On January 2, 2002, a letter of termination was sent to Mr. Dickson from the administrative hearing official. The letter reads, in pertinent part, as follows:

---

[1] Mr. Dickson contested the positive results as well as the release of those results. Prior to the Civil Services hearing, Mr. Dickson filed a notice of preliminary issue contesting the allegedly improper release of his test results. His motion was denied.

On December 4, 2001, you [Dickson] were asked to report for a random drug screening. The test indicated a positive result for cocaine. You were then asked to explain the presence of cocaine in your system. You stated that you attended a bachelor party December 2, 2001, and you believe that the cocaine had been given to you without your knowledge. The cocaine was possibly in a soft drink. You also stated that you were devastated and surprised by the positive result, because you knew you had not taken any cocaine.

*                                    *                                    *

Following review of all information presented during the administrative investigation and hearing, I have determined you to be in violation of the Employee Assistance Program, Alcohol and Drug Treatment Policy, and contractual agreement, to which you agreed on May 10, 2001.

The City of Memphis Employee Assistance Program Alcohol and Drug Treatment Policy states in part:
"Resumption of alcohol/illegal drug usage will be reported to Management and could result in disciplinary action. If you continue the use of alcohol/illegal drugs, this will result in termination of employment with the City of Memphis." The signed contractual agreement also advises that "Being a Firefighter and being in a safety sensitive position, you may be terminated upon receipt of a first positive drug screen after entrance into the Employee Assistance Program. Illegal drug use and employment with the City of Memphis are incompatible.["]

As a result of the investigation and the facts, which are evident in this case, you must be aware of the serious consequences that could result from being under the influence of alcohol or illegal drugs. Your critical position and responsibility as a Firefighter dictates you maintain strict control of all your physical and mental faculties in order for you to be able to deliver quality services, often in extreme emergency situations. The citizens of Memphis and the Division of Fire Services cannot accept less.

Therefore, because of your actions and because of your violation of the above stated employment conditions, you are hereby terminated from employment with the division of Fire Services effective 0700 Hours on January 5, 2002.

Mr. Dickson appealed his termination to the Civil Service Commission (the "Commission") and a hearing was held on January 31, 2003. Prior to the hearing, Mr. Dickson objected to the admission of the positive drug screen on grounds that such admission violated certain of Mr. Dickson's federal constitutional and privacy rights. The Commission overruled the objection and allowed the positive test results into evidence.

Following the hearing, on May 7, 2003, the Commission issued its unanimous Decision in which it concluded that the City had proven, by a preponderance of the evidence, "that Mr. Dickson violated City of Memphis Personnel Manual Substance Abuse Policy PM-78-03, Section 78-00, Employee Conduct." Consequently, the Commission sustained Mr. Dickson's termination.

On July 7, 2003, Mr. Dickson filed a "Petition for Writ of Certiorari" to the Chancery Court of Shelby County. As grounds for his appeal, Mr. Dickson asserts that the "Commission's actions violated Tennessee Code Annotated §4-5-322(h)."[2] On September 14, 2003, the Commission filed its Answer, which denied the material allegations of the "Petition for Writ of Certiorari". The Answer also reads, in relevant part, as follows:

> ...Respondents aver that the Commissioners considered the admissibility of the drug test results offered into evidence by Respondents and acted in conformity with the rules governing the admissibility of evidence at Civil Service proceedings. Further, the Commission acted in accordance to an Order issued by this Honorable Court which provided:
>
>> That drug test results are in the custody of the Memphis police department for whose benefit such drug tests are given to ensure that there is a drug free workplace environment consistent with the federal, state and local requirements. The police department or its authorized personnel, may utilize that information for purposes of any employment or disciplinary proceeding, and can review and consider the contents of any such information, but may not disclose that information to a third party. Where an Officer who has appealed a disciplinary action or termination to the Civil Service Commission, the Memphis police department, which is the custodian of that information, can provide a copy of same to the Civil Service Commission, under seal, for the purpose of supporting its decision to take disciplinary action and in order for the Civil Service Commission to

---

[2] T.C.A. §4-5-322(h) is set out *infra*.

determine whether the actions of the City were arbitrary, capricious or based upon a reasonable conjecture. That information cannot be disclosed to people who do not have a right to know. The City is not precluded from considering the information relative to the employee's drug testing or alcohol testing, and where the employee appeals the City's decision then the City can provide to the Civil Service Commission information upon which it based its decision.

(John Doe vs. City of Memphis, et al., No. CH-02-1676-1, Permanent Restraining Order and Declaratory Judgment, October 14, 2002)....

Following its review, the Chancery Court issued its "Findings of Facts and Conclusions of Law" on May 25, 2004. The "Findings of Facts and Conclusions of Law" reads, in pertinent part, as follows:

## FINDINGS OF FACTS

\*                                    \*                                    \*

7) Before the Civil Service Hearing, on January 31, 2003, Dickson filed a Notice of Preliminary Issue contesting the admission of the drug testing results on the grounds that the results were protected by 42 United States Code § 290dd-2 (2004).

8) During the Civil Service Hearing, the City, to support Dickson's termination, presented his positive test results taken on December 6, 2001, the signed Alcohol and Drug Treatment Policy agreement, and the signed Follow-Up Substance Abuse Testing Agreement.

9) Dickson objected to the evidence presented during the civil service hearing on the grounds that the evidence violated his right to privacy and the federal law on urinalysis procedures. The Commission overruled the objection.

## PETITIONER'S CONTENTIONS

\*                                    \*                                    \*

14) Dickson also argues that the City[] violated his right to privacy when the federal drug consent policy was violated.

-6-

15) Dickson asserts that the City's consent document does not comply with the federal regulations.

## RESPONDENT'S CONTENTIONS

16) The City asserts that the Civil Service Commission's decision was supported by a preponderance of the evidence and that there was substantial and material evidence to support the decision.

17) The City asserts that the Civil Service Commission only has the power to reverse or sustain the action taken by them, not the authority to modify the disciplinary action imposed.

18) The City maintains that Dickson is without authority to delve into the City's decision to terminate [him] versus imposing some other form of discipline because the termination was the disciplinary action imposed.

*                              *                              *

## CONCLUSIONS OF LAW

20) 42 United States Code § 290-dd-2(2004) prohibits the disclosure of the records of patients participating in a federally assisted alcohol treatment program, unless disclosed as expressly authorized under the statute.

21) Section 290dd-2(b)(1) provides that the content of any record may be disclosed with prior written consent of the patient.

22) 42 Code of Federal Regulations §2.31 (2004) provides , in part, that written consent to a disclosure under these regulations must include:

   a. Specific name or general designation of the program or person permitted to make the disclosure

   b. Name or title of the individual or the name of the organization to which disclosure is to be made

   c. Name of the patient

   d. Purpose of the disclosure

-7-

e. How much and what kind of information is to be disclosed

f. Signature of the patient

g. Date consent is signed

h. Statement that the consent is subject to revocation at any time

i. Date, event, or condition which the consent will expire, if not revoked.

23) C.F.R. §2.31(c)(2) provides that a disclosure may not be made on the basis of a consent which on its face substantially fails to conform to any of the requirements set forth [in] the section.

## CONCLUSION

24) The Court finds that the Alcohol and Drug Treatment Policy agreement Dickson signed on March 30, 2001 is invalid because the agreement did not comply with the federal regulations governing the disclosure of confidential records in that it 1) failed to include the kind and amount of information to be disclosed; 2) failed to specifically state who the disclosure should be made to; 3) failed to provide the date, event, and condition that the consent would expire; 4) failed to inform the patient that the consent could be revoked.

25) The Court further finds that because the City's agreement is invalid, it is unable to rely on the agreement as the basis to obtain Dickson's records regarding his treatment in the EAP.

26) The Court further finds that because the drug results were released erroneously based on an improper consent form, the City is precluded from using the results as the basis of Dickson's termination.

27) For all of the above reasons, it appears that the decision of the Civil Service Commission was in violation of a statutory provision.

28) The Court further finds that because there was no other proof offered by the City to sustain Dickson's termination on the grounds

of violating the City's Personnel Manual Substance Abuse Policy, PM-78-03, Section 78-00. Employee Conduct, the Civil Service Commission's decision should be reversed.

On June 24, 2004, the City filed a Motion to Alter, Amend, or Reconsider Judgment. As a basis for its Motion, the City relied upon the trial court's allegedly contradictory ruling in the *John Doe* case, *see supra*. The City's Motion was denied by Order entered August 17, 2004. The City appeals and raises one issue for review as stated in its brief:

> Whether the Civil Service Commission of the City of Memphis acted within its constitutional and statutory authority and discretion by upholding the termination of employee, Morris Dickson, of the City of Memphis Fire Department.

Here, Mr. Dickson allegedly violated the City's Personnel Manual Substance Abuse Policy. As the trial court correctly notes, no offers of proof, other than the positive drug test, were offered as grounds for Mr. Dickson's alleged violation. Consequently, the gravamen of the question before this Court is whether that positive drug test was properly admitted. If so, the Commission should be affirmed and the termination should stand; if not, the Chancery Court should be affirmed and Mr. Dickson's termination should be reversed.

We first note that the Chancery Court's review of the Commission's Decision in this matter is governed by T.C.A. §4-5-322(h), which sets forth the standard of review on appeal of administrative proceedings as follows:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> > (1) In violation of constitutional or statutory provisions;
> >
> > (2) In excess of the statutory authority of the agency;
> >
> > (3) Made upon unlawful procedure;
> >
> > (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> >
> > (5) Unsupported by evidence which is both substantial and material in the light of the entire record.

> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

This Court's scope of review is the same as in the trial court: to review the findings of fact of the administrative agency upon the standard of substantial and material evidence. ***DePriest v. Puett***, 669 S.W.2d 669 (Tenn. Ct. App. 1984). Although T.C.A. § 4-5-322 does not clearly define "substantial and material" evidence, courts generally interpret the requirement as requiring "something less than a preponderance of the evidence, but more than a scintilla or glimmer." ***Wayne County v. Tennessee Solid Waste Disposal Control Bd.***, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988) (citations omitted).

While this Court may consider evidence in the record that detracts from its weight, the court is not allowed to substitute its judgment for that of the agency concerning the weight of the evidence. *See* T.C.A. §4-5-322(h), ***Pace v. Garbage Disposal Dist.***, 390 S.W.2d 461, 463 (Tenn. Ct. App. 1965). The evidence before the tribunal must be such relevant evidence as a reasonable mind might accept as adequate to support the rational conclusion and such as to furnish a reasonably sound basis for the actions under consideration. ***See Pace***, 390 S.W.2d at 463.

The crux of the City's argument is that the Chancery Court applied an improper standard of review. Specifically, the City asserts that there was a reasonable basis for the discipline imposed upon Mr. Dickson as proved by a preponderance of the evidence at the Commission hearing. In its brief, the City states that "it is the Chancery Court's focus on the 'disclosure of confidential records' and not the 'drug test results' that is misplaced." We disagree. As we have noted above, if the only material evidence to support Mr. Dickson's termination stems from the City's reliance upon the results of a drug test that was either improperly obtained or improperly disclosed, then there is no other material evidence to support the Commission's findings and the Chancery Court was correct in reversing same.

We have reviewed the transcript of the hearing before the Commission and we conclude that the positive drug test was the sole basis for Mr. Dickson's termination. Consequently, we turn to the question of whether this test was properly admitted. We first note that the City's Personnel Manual Substance Abuse Policy, PM 78-03 (Exhibit 7 at the hearing) states that the City of Memphis will comply with "Public Law 100-690." P.L. 100-690, 1988 H.R.5210, states that a plan must comply with 42 U.S.C. 300X-9a. P.L. 100-690 also states that the funding will be covered under 42 U.S.C. 290AA-6(d). 42 U.S.C. is part of the statute that covers what an agency must do in order to be in compliance with the federal law when they receive federal funds. 42 U.S.C. § 290dd-2, entitled "Confidentiality of Records" states, in relevant part, that:

> (a) Requirement

Records of the identity, diagnosis, prognosis, or treatment of any patient[3] which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

(b) Permitted disclosure

(1) Consent
The content of any record referred to in subsection (a) of this section may be disclosed in accordance with the prior written consent of the patient with respect to whom such record is maintained, but only to such extent, under such circumstances, and for such purposes as may be allowed under regulations prescribed pursuant to subsection (g) of this section.

42 C.F.R.§2.31 governs the content of the written consent referenced in the above statute and reads, in pertinent part, as follows:

§ 2.31 Form of written consent.

(a) Required elements. A written consent to a disclosure under these regulations must include:
(1) The specific name or general designation of the program or person permitted to make the disclosure.
(2) The name or title of the individual or the name of the organization to which disclosure is to be made.
(3) The name of the patient.
(4) The purpose of the disclosure.
(5) How much and what kind of information is to be disclosed.
(6) The signature of the patient and, when required for a patient who is a minor, the signature of a person authorized to give consent under § 2.14; or, when required for a patient who is incompetent or

---

[3] 42 C.F.R. §2.11 defines "patient" as "any individual who has applied for or been given diagnosis or treatment for alcohol or drug abuse at a federally assisted program and includes any individual who, after arrest on a criminal charge, is identified as an alcohol or drug abuser in order to determine that individual's eligibility to participate in a program."

deceased, the signature of a person authorized to sign under § 2.15 in lieu of the patient.

(7) The date on which the consent is signed.

(8) A statement that the consent is subject to revocation at any time except to the extent that the program or person which is to make the disclosure has already acted in reliance on it. Acting in reliance includes the provision of treatment services in reliance on a valid consent to disclose information to a third party payer.

(9) The date, event, or condition upon which the consent will expire if not revoked before. This date, event, or condition must insure that the consent will last no longer than reasonably necessary to serve the purpose for which it is given.

The Chancery Court found that the forms signed by Mr. Dickson and set out above (i.e. the "Treatment Plan/Assessment" and/or the "Follow-Up Substance Abuse Testing Agreement") failed to comply, in part, with the above regulations. We agree. Specifically, we find that these forms fail to indicate, pursuant to 42 U.S.C. §2.31(8), that the consent is subject to revocation. Furthermore, the form(s) contain no provision, pursuant to 42 U.S.C. §2.31(9), indicating that the consent will expire upon a certain date or condition. 42 C.F.R. §2.31(c)(2) clearly states that a "disclosure may not be made on the basis of a consent which...on its face substantially fails to conform to *any* of the requirements set forth in paragraph (a) of this section..." (emphasis added). Since the consent forms fail to comply with the applicable federal regulations, use or disclosure of Mr. Dickson's positive drug test was invalid.

In its argument, the City relies upon the case of ***John Doe v. City of Memphis, Memphis Police Department, Walter Crews***, CH-02-1676-1 (Oct. 14, 2002). In that case, the issue before the Chancery Court was whether the City of Memphis was required to release certain drug test records of its employees to opposing counsel. The trial court held that the records were "confidential" and that those test results are "in the custody" of the Memphis police department. Although the trial court ultimately held that "any Memphis police officer...has a right to receive a copy of his or her own drug test results if any adverse action is being taken or sought to be taken against him or her...," the trial court did not specifically find that the City's Personnel Manual did not violate applicable Federal law, to wit:

> 5. The City's Personnel Manual, Section 74-03, states that "drug/alcohol testing results will be held confidential to the extent permitted by law. Positive test results may be used in any administrative or legal proceedings or situations wherein the test results are relevant to employment, including...disciplinary procedures, Civil Service Commission appeals, court proceedings." The Court found that the aforesaid provision to be [] clear on its face, ~~and not in conflict with any applicable Federal statute or regulation presented to the Court~~.

-12-

This stricken line was initialed by the trial court. From the record before us, we cannot say that the *John Doe* decision has any bearing whatsoever on the case at bar. In the first instance, there is no indication as to what consent forms were used in the *Doe* Case. Moreover, the primary issue before this Court is whether Mr. Dickson's positive results were properly admitted or whether they were inadmissible because there was a violation of Federal law in either the City's obtaining those records or in the dissemination of same. As noted above, the trial court in *Doe* declined to rule as to whether the City's procedures were in violation of Federal Law. Consequently, we find that the City's reliance upon the *Doe* case is misplaced. The City also cites the Commission's ruling on the admissibility of drug test results in the case of Darrin Yates. The only information in the record before this Court is a portion of the transcript of that proceeding, which was attached to the City's Answer in this matter. Again, from the record, we cannot find that the disposition of the Yates' case has any bearing upon the case at bar. As in *Doe*, we do not know what procedures/policies were followed and/or what consent forms were signed by Mr. Yates.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed against the Appellant, City of Memphis Civil Service Commission.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.