# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### July 19, 2012 Session

## CITY OF MEMPHIS CIVIL SERVICE COMMISSION v. STEVEN PAYTON

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-11-0253-2       Arnold B. Goldin, Chancellor**

---

**No. W2011-02501-COA-R3-CV - Filed November 7, 2012**

---

A City of Memphis firefighter who participated in the City's employee assistance program was terminated after his second positive drug screen. The firefighter appealed his termination to the Civil Service Commission. He argued that his drug screen results were confidential under federal law and that he had not executed a consent form to authorize the disclosure of the results to the City. The Commission overruled the firefighter's motion to exclude the test results and upheld his termination. The chancery court reversed, finding that the drug screen results were inadmissible because the City had failed to comply with federal law. We find substantial and material evidence to support the decision of the Commission, and therefore reverse the decision of the chancery court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined and HOLLY M. KIRBY, J., concurred separately.

Iyona Hilliard Houston, Assistant City Attorney, Memphis, Tennessee, for the appellant, City of Memphis Civil Service Commission

Darrell J. O'Neal, Memphis, Tennessee, for the appellee, Steven Payton

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Steven Payton ("Payton") was employed as a lieutenant with the City of Memphis Division of Fire Services. On or about December 10, 2008, Payton submitted to a random drug screen while on duty, and he tested positive for marijuana. Following an administrative hearing at fire headquarters on December 18, 2008, Payton was suspended without pay for 360 hours, and he received a management referral to the City's Employee Assistance Program ("EAP"). Payton executed an agreement that provided, in pertinent part:

CITY OF MEMPHIS

EMPLOYEE AGREEMENT
MANAGEMENT REFERRAL
RETURN-TO-DUTY REQUIREMENTS and FOLLOW-UP TESTING

The City of Memphis Government is a drug-free workplace. As a condition of your continued employment with the City, you must agree to the following terms:

1. To be assessed by an EAP counselor within seven (7) calendar days of this agreement.
2. To comply with all recommendations set forth by the EAP counselor.
3. To agree to the release of regular compliance reports regarding EAP recommendations.
4. To remain free of illegal drugs.
5. To refrain from misusing prescription drugs or alcohol.
6. To agree to return-to-duty and periodic drug and/or alcohol testing for a period of four (4) years as directed by the Drug Testing Coordinator/designee and your Division Director or designee.
7. To immediately report for drug/alcohol testing when notified.

. . . You will not be allowed to work or to be on City property until you pass a return-to-duty test and you have obtained a written release from your Employee Assistance Program counselor or the City's Drug Testing Coordinator/designee.
. . . .

Approximately six weeks later, on February 4, 2009, Payton was given a return-to-duty drug screen, which was negative. Payton was permitted to return to work, and over the next

several months, he passed several follow-up drug screens. However, on May 17, 2010, he again tested positive for marijuana. Following another administrative hearing, Payton was terminated effective May 26, 2010.

Payton appealed his termination to the City's Civil Service Commission. Prior to his hearing, he filed a motion to exclude any documents or statements related to his drug treatment records, including the positive drug screens. Payton basically argued that because the City's EAP is a federally assisted alcohol and drug abuse program, the records maintained in connection with the program are confidential, and he had not consented to the release of his records. Payton cited numerous federal statutes and regulations in support of his position, and he also relied upon this Court's opinion in *Dickson v. City of Memphis Civil Service Comm'n*, 194 S.W.3d 457 (Tenn. Ct. App. 2005). In response, the City argued that it had not obtained Payton's drug test results from the EAP, and therefore, *Dickson* was distinguishable. The Civil Service Commission denied Payton's motion to exclude the records upon concluding that the Return to Duty and Follow-up Testing Agreement, as well as Payton's positive follow-up drug test, "were part of the City's disciplinary process . . . and were not part of a Federally Funded EAP Program." After considering the positive test results and other evidence, the Commission concluded that Payton's termination was justified under all the circumstances.

Payton filed a petition for writ of certiorari in the Shelby County Chancery Court. Upon reviewing the record, the chancery court reversed the decision of the Civil Service Commission and ordered Payton reinstated. The chancery court concluded that the facts of this case are "identical" to those in *Dickson*, and that Payton's test results were inadmissible because of the City's failure to comply with federal law. The City of Memphis and the Civil Service Commission timely filed a notice of appeal.

## II. ISSUES PRESENTED

On appeal, the issues raised by the parties are essentially:

1. Whether the trial court erred in concluding that Payton's test results should have been excluded pursuant to federal law and *Dickson v. City of Memphis Civil Serv. Comm'n*, 194 S.W.3d 457 (Tenn. Ct. App. 2005); and
2. Whether the Commission's decision to uphold Payton's termination was unsupported by substantial and material evidence and therefore arbitrary and capricious.

For the following reasons, we reverse the decision of the chancery court and affirm the decision of the Commission to uphold Payton's termination.

### III. STANDARD OF REVIEW

Judicial review of this matter is governed by the Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-322. ***See* Tenn. Code Ann. § 27-9-114(b)(1).**

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

**Tenn. Code Ann. § 4-5-322.** "Substantial and material evidence" has been defined as "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Macon v. Shelby County Gov't Civil Serv. Merit Bd.*, 309 S.W.3d 504, 509 (Tenn. Ct. App. 2009). It requires "'something less than a preponderance of the evidence, but more than a scintilla or glimmer.'" *Id.* (quoting *Wayne County v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)). We may reject the Commission's factual findings "only if a reasonable person would necessarily reach a different conclusion based on the evidence." *Davis v. Shelby County Sheriff's Dep't*, 278 S.W.3d 256, 265 (Tenn. 2009) (citing *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001)). However, the "substantial and material evidence" standard still requires a "searching and careful inquiry" that subjects the Commission's decision to close scrutiny. *Freedom Broadcasting of TN, Inc. v. Tenn. Dep't of Revenue*, 83 S.W.3d 776, 781 (Tenn. Ct. App. 2002). A court's deference to an agency or commission's expertise is "'no excuse for judicial inertia.'" *Willamette Indus., Inc. v. Tenn. Assessment Appeals Comm'n*, 11 S.W.3d 142, 147 (Tenn. Ct. App. 1999) (quoting *Wayne County*, 756 S.W.2d at 279). "An agency decision that is not supported by substantial and material evidence is, by definition, arbitrary and capricious."

***Outdoor Resorts at Gatlinburg, Inc. v. Utility Mgmt. Review Bd.***, No. E2011-01449-COA-R3-CV, 2012 WL 1267858, at *5 (Tenn. Ct. App. Apr. 13, 2012) (citing *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110 (Tenn. Ct. App. 1993)).

## IV. DISCUSSION

Federal statutes and regulations impose restrictions upon the disclosure and use of the records of alcohol and drug abuse patients maintained in connection with the performance of any federally assisted alcohol and drug abuse program. ***See* 42 C.F.R. § 2.3(a).** These confidentiality rules "are intended to insure that an alcohol or drug abuse patient in a federally assisted alcohol or drug abuse program is not made more vulnerable by reason of the availability of his or her patient record than an individual who has an alcohol or drug problem and who does not seek treatment." **42 C.F.R. § 2.3(b)(2).**

> The relevant federal statute is 42 U.S.C.A. § 290dd-2, which provides, in part: Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

**42 U.S.C.A. § 290dd-2(a).** One of the circumstances in which disclosure is permitted under subsection (b) is in case of the patient's prior written consent:

> The content of any record referred to in subsection (a) of this section may be disclosed in accordance with the prior written consent of the patient with respect to whom such record is maintained, but only to such extent, under such circumstances, and for such purposes as may be allowed under regulations prescribed pursuant to subsection (g) of this section.[1]

**42 U.S.C.A. § 290dd-2(b)(1).** Federal regulations specifically address the form of written consent that is required for disclosure of a patient's records. There are nine "required

---

[1] The federal regulations implementing these confidentiality provisions are found at 42 C.F.R. § 2.1, *et seq.* "The patient records to which these regulations apply may be disclosed or used only as permitted by these regulations and may not otherwise be disclosed or used in any civil, criminal, administrative, or legislative proceedings conducted by any Federal, State, or local authority." **42 C.F.R. § 2.13(a).**

elements" that must be included on a written consent form,[2] and "disclosure may not be made on the basis of a consent which . . . [o]n its face substantially fails to conform to any of the requirements[.]" **42 C.F.R. § 2.31.**

In the case before us, the City's drug testing coordinator, who testified before the Commission, admitted that she was not aware of any consent form executed by Payton that authorized her, or the City, to access his drug screen results. We note that the written agreement executed by Payton in which he agreed to the EAP assessment, entitled "Management Referral - Return-to-Duty Requirements and Follow-up Testing," provided:

> Confidentiality will be observed to the extent permitted by law. However, substance abuse and employment with the City of Memphis Government are incompatible. . . . Any information regarding the resumption of alcohol misuse or drug abuse will be reported to the Drug Testing Coordinator and to your Division Director or designee and will result in disciplinary action. . . .

> My signature below indicates that I have read, understand, and agree to these provisions for returning to duty with the City of Memphis Government. I also understand that a record will be maintained regarding my <u>drug/alcohol testing results</u> and my <u>compliance with the recommendations</u> made by my Employee Assistance Program counselor. I understand that this information can be used in my behalf or in the City's behalf in any administrative or legal proceedings

---

[2] The required elements, listed in 42 C.F.R. § 2.31, are:

(1) The specific name or general designation of the program or person permitted to make the disclosure.
(2) The name or title of the individual or the name of the organization to which disclosure is to be made.
(3) The name of the patient.
(4) The purpose of the disclosure.
(5) How much and what kind of information is to be disclosed.
(6) The signature of the patient [or person authorized to sign for a minor, incompetent, or deceased patient]
(7) The date on which the consent is signed.
(8) A statement that the consent is subject to revocation at any time except to the extent that the program or person which is to make the disclosure has already acted in reliance on it. Acting in reliance includes the provision of treatment services in reliance on a valid consent to disclose information to a third party payer.
(9) The date, event, or condition upon which the consent will expire if not revoked before. This date, event, or condition must insure that the consent will last no longer than reasonably necessary to serve the purpose for which it is given.

or situations wherein the records are relevant to my employment, including, but not limited to, disciplinary matters, grievance and arbitration matters, Civil Service Commission appeals, court proceedings and/or Unemployment Compensation matters.

However, this document clearly failed to contain all of the "required elements" of a proper patient consent form pursuant to the aforementioned federal regulations. In fact, the City concedes that this document is not a valid patient consent form under the federal regulations.[3] The City basically claims that there was no need for a consent form in the instant case because Payton's drug screen was not part of the Employee Assistance Program, and therefore, it was not subject to the federal regulations. The question before us, then, is whether Payton's drug screen results were subject to the federal confidentiality rules.

Again, the relevant federal statute states that
Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

**42 U.S.C.A. § 290dd-2(a).** There is surprisingly little information in the record regarding the nature of the City's EAP program.[4] However, the City's drug testing coordinator testified that when the drug test in question was administered, Payton had already been "released" from the EAP and placed in the "follow-up program." She explained that this is the standard procedure for employees who have completed their "treatment status." We find that this testimony provides substantial and material evidence to support the Commission's finding that the follow up drug screen administered to Payton was for disciplinary reasons; it was not for treatment. There is simply no evidence in this record from which we could conclude that

---

[3] Before the Commission, the City acknowledged that the written agreement executed by Payton was "not a consent form" to release patient records.

[4] We note that, throughout the proceedings below, the City alternatively argued that it could release and use drug test results of federal program participants without their consent, according to 49 C.F.R. § 40.323. The Commission agreed. The chancery court reversed this finding upon concluding that the cited regulation applies only to DOT testing, and therefore, it was inapplicable in this matter. The City did not appeal the chancery court's finding in that regard.

the drug screen was for the purpose of "diagnosis, prognosis, or treatment."[5] *See* **42 U.S.C.A. § 290dd-2(a)** Therefore, we agree with the Commission's conclusion that the record of Payton's drug screen was not subject to the federal confidentiality rules cited above.

Although ***Dickson v. City of Memphis Civil Service Comm'n***, 194 S.W.3d 457 (Tenn. Ct. App. 2005) is factually similar, it does not resolve the issues presented in this case. In ***Dickson***, a Memphis firefighter voluntarily reported to the City's EAP for treatment due to marital problems. Approximately six weeks later, he signed a "Follow–Up Substance Abuse Testing Agreement," in which he agreed to periodic drug and alcohol testing for a period of four years. After he passed a return-to-duty drug screen, he was "discharged from the initial treatment program" and permitted to return to work. A few months later, the firefighter submitted to a follow-up drug screen, which tested positive for cocaine. His positive test results were released to the EAP and to the City, and following an administrative hearing, the firefighter was terminated. On appeal to the Civil Service Commission, the firefighter objected to the admission of the positive drug screen on grounds that such admission violated his federal privacy rights. The Commission overruled the objection, allowed the positive test results into evidence, and upheld the termination. The chancery court reversed, and this Court affirmed the chancery court's decision. We concluded that the "Follow-Up Substance Abuse Testing Agreement" signed by the firefighter did not contain the required elements for a valid patient consent form under 42 C.F.R. § 2.31. As such, the follow-up drug screen results were inadmissible due to the City's failure to comply with the federal regulations. Clearly, the focus of our analysis in ***Dickson*** was on the sufficiency of the consent forms signed by the patient. The ***Dickson*** opinion does not specifically state how the Court reached its conclusion that the drug screen results were subject to the federal confidentiality rules in the first place. It simply applied 42 U.S.C. § 290dd-2, as the federal statute "that covers what an agency must do in order to be in compliance with the federal law when they receive federal funds." *Id.* at 464. In the case before us, we are squarely presented with issues that were not discussed in ***Dickson***.

---

[5] The parties failed to discuss the relevant statutory language in their briefs on appeal, so Payton has not presented any argument to suggest that the drug screen result was a record regarding diagnosis, prognosis, or treatment.

## V.  CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby reversed, and the Commission's decision to uphold termination is affirmed. Costs of this appeal are taxed to the appellee, Steven Payton, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.