IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 8, 2007 Session

## ROBERT T. LOGAN, JR. v. CIVIL SERVICE COMMISSION OF THE CITY OF MEMPHIS , ET AL.

Direct Appeal from the Chancery Court for Shelby County
No. CH-01-0605-2      Arnold B. Goldin, Chancellor

---

No. W2007-00324-COA-R3-CV - Filed March 18, 2008

---

This appeal arises from the termination of a police officer for violation of the department's deadly force policy. While in the apartment of his girlfriend's mother, the off-duty officer shot the unarmed husband of his girlfriend in the back and paralyzed him from the waist down. The officer was attempting to stop the enraged husband from entering a room where the girlfriend, her mother, and a young child were located. He did not warn the husband that he might use deadly force prior to doing so. The police department and the civil service commission concluded that, for various reasons, the officer's use of deadly force was not authorized. The officer appealed his termination to chancery court, primarily arguing that the department had failed to consider a parallel burglary investigation report in the pre-termination hearing. Although the civil service commission had concluded that consideration of that file would not have altered the outcome, the chancellor remanded the case back to the commission for consideration of the entire report. On remand, the commission reviewed the entire report but declined to hear further testimony. It re-affirmed its original decision. The officer sought review in chancery court and, after an unfavorable result there, appealed the case to this Court. We conclude that, even if the officer's assertions are correct, there still exists substantial and material evidence to support the decisions below. If there was error below, it was harmless. Affirmed.

**Tenn. R. App. P. 3 Appeal as of right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., joined, W. Frank Crawford, J., not participating.

Clyde William Keenan, Memphis, Tennessee, for the appellant, Robert T. Logan, Jr.

Elbert Jefferson, Jr., City Attorney and Steven D. Townsdin, Senior Assistant City Attorney, Memphis, Tennessee, for the appellee, Civil Service Commission of the City of Memphis and The City of Memphis.

# OPINION

On February 19, 1996, while off duty, Robert T. Logan, Jr. (Sergeant Logan) shot his girlfriend's husband in the back, causing paralysis from the waist down. Sergeant Logan had been engaged in an extramarital affair for some time with Brenda Glover (Mrs. Glover), but Mrs. Glover had recently reconciled with her husband. Approximately one week before the day of the incident, Mrs. Glover had attempted to commit suicide by drug overdose in the apartment of Marie Jefferson (Ms. Jefferson), her mother. Her husband, Melvin Glover (Mr. Glover), kicked in the door of the apartment to reach her and transport her to a hospital. She remained in the hospital for approximately five or six days and, on the day of the subject incident, was discharged early (without notifying Mr. Glover of this), and returned to her mother's apartment.

At the time of the incident, Sergeant Logan was visiting Mrs. Glover in her mother's apartment for a second time that day. During the first visit, Mrs. Glover had confirmed that she did not want to see Sergeant Logan anymore, and he was visiting again to return some of her personal belongings. Although Sergeant Logan disputes this point, the record makes clear that Mr. Glover had attempted to call the apartment from the hospital, that Ms. Jefferson did not answer the telephone, but that she knew from seeing the caller's telephone number that it was Mr. Glover. Everyone in the apartment knew Mr. Glover was coming there from the hospital.

Mrs. Glover asked him to leave to avoid a confrontation with her husband, and the record reflects that Sergeant Logan initially agreed to do so. Ms. Jefferson asked him to stay, however, as she feared Mr. Glover would hurt one or both of the women. The Commission stipulated, and Mrs. Glover admitted, that her husband had physically abused her for the first two years of their marriage. Four years had elapsed, however, since the last abusive episode, and Sergeant Logan did not dispute this fact.

Mr. Glover arrived at the apartment and forcibly broke through the door. At Sergeant Logan's instruction, Mrs. Glover, her baby cousin, and Ms. Jefferson then barricaded themselves in a back bedroom. Sergeant Logan asserts that he physically tried to prevent Mr. Glover from breaking down the bedroom door, but that Mr. Glover injured him and then proceeded to the door. He began to beat on the door and yelled that he was going to see and talk to his wife. To stop Mr. Glover from gaining entry to the bedroom, Mr. Logan fired one round from his police service revolver and struck him in the back. Mr. Glover was unarmed. As a result of the gunshot wound, he is now paralyzed and confined to a wheelchair.

The Memphis Police Department conducted an internal investigation through two squads: the Security Squad and the Burglary Bureau. The Security Squad, in Shoot File 09-96, concluded that Mr. Logan's use of deadly force was not justified, but the Burglary Bureau concluded that Mr. Glover was committing an aggravated burglary at the time of the incident.

On February 27, 1996, the Internal Affairs division of the Memphis Police Department charged Sergeant Logan with violating two rules: 101-Compliance with Regulations and 104-

Personal Conduct. The Personal Conduct charge was later dismissed, but with respect to the compliance charge, the statement alleged that the husband was not armed and thus did not pose an immediate threat of deadly force; that Sergeant Logan failed to identify himself and warn the husband that deadly force might be used; and that Sergeant Logan used poor judgment when he did not leave the apartment at his girlfriend's request and thereby avoid confrontation.

Deputy Chief Walter Crews conducted a pre-termination hearing on March 1, 1996. In reaching his decision, Deputy Chief Crews considered Shoot File 09-96, photos of the scene, and Sergeant Logan's statement. The report filed after the hearing (and signed by Sergeant Logan) recited, in pertinent part, as follows:

> Sgt. Logan gave a statement in this hearing against the advice of his attorney . . . .
>
> In his statement, Sgt. Logan outlined how he was at the object of his attentions mother's home on Crockett when [her husband] called. Sgt. Logan admitted that he was advised to leave by this woman, but chose to stay when asked too [sic] by her mother.
>
> The husband did arrive, a short while later, kicked in the front door, fought with Sgt. Logan, and proceeded to the room where the two women and a young child had gone to hide. According to Sgt. Logan, he exhausted himself in the struggle with the husband, and was also slightly injured. He thought the husband was about to do serious harm to the two women and child, and he fired one shot which critically injured the husband.
>
> However, the husband was not armed, and never struggled with Sgt. Logan in an attempt to disarm him.
>
> Also, Sgt. Logan stated that in the past he had avoided the husband by not going to a local hospital, when the object of his attention had attempted suicide. He said he felt "like an intruder." He also mentioned that he (Sgt. Logan) did not think the husband was "as dangerous as they (wife and mother) thought."
>
> It is the opinion of the hearing officer that Sgt. Logan did not exhaust every reasonable means necessary to avoid using deadly force, and that he could have avoided this conflict by leaving the premises when advised of the possible arrival of the husband, or by requesting immediate police assistance by use of the phone or his police radio. Additionally, the hearing officer did not find an immediate threat of deadly force to Sgt. Logan or the women. Therefore, the charge of Compliance with Regulations is sustained.

Following the hearing, the Department terminated Sergeant Logan's employment for violation of Department Rule (DR) 101, Compliance with Regulations, because he violated the

deadly force policy. The Memphis Police Department Policy and Procedures manual authorizes the use of deadly force, in pertinent part, under the following conditions:

> Officers shall use only the minimum amount of force which is consistent with the accomplishment of their duties and must exhaust every other reasonable means of prevention, apprehension, or defense before resorting to the use of deadly force.
>
> Pursuant to state law, deadly force may be used in the following circumstances AFTER ALL OTHER REASONABLE MEANS OF APPREHENSION OR PREVENTION HAVE BEEN EXHAUSTED:
>
> a.    In self-defense where the officer has been attacked with deadly force,[1] is being threatened with the use of deadly force, or where the officer has probable cause and reasonably perceives an immediate threat of deadly force.
>
> b.    In defense of others where a third party has been attacked with deadly force, is being threatened with the use of deadly force, is in danger of serious bodily injury or death during the actual commission of a crime against his person, or where the officer has probable cause and reasonably perceives an immediate threat of deadly force to a third party.
>
> c.    To prevent the commission of a violent felony[2] in progress.
>
> . . . .
>
> e.    If the officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or to others unless he is immediately apprehended.

Even if the circumstances fall within one of the above categories, the officer may use deadly force only after having exhausted all other reasonable means of apprehension or prevention. The policy manual defines "Exhaustion of [A]ll Other Reasonable Means" as follows:

> All other reasonable means have been exhausted when an officer has tried to control conflict by using all alternate methods other than deadly force; however, all other reasonable means may be considered to have been exhausted when an officer analyzes a set of circumstances and honestly and reasonably concludes that any other

---

[1]The policy manual defines "deadly force" as "[t]hat amount of force that is sufficient to, intended to, or may be reasonably expected to inflict serous bodily injury and/or death."

[2]Similarly, the manual defines "violent felony" as a "felony in which the suspect has used, threatened to use, or attempted to use force that will cause death or serious bodily injury."

means will be ineffective, useless, or hazardous to the officer or some innocent third party. In order to qualify as having exhausted all other reasonable means, the officer must be able to show that his use of deadly force WAS immediately necessary. The officer must also have communicated his identity and purpose to the suspect, unless those facts are already known by the suspect or cannot REASONABLY be made known to the suspect under the circumstances. Where feasible, warning should be given the suspect by identifying himself as an officer, or by an oral order to halt, or by an oral warning that deadly force might be used. In deciding whether the use of deadly force is reasonably necessary, the officer must consider whether other action on his part could eliminate the immediate need for deadly force. (Emphasis in original.)

Sergeant Logan appealed his termination to the Commission, which held a formal, two-day hearing on November 13 and 18, 1998. Deputy Chief Crews testified before the Commission and clarified his reasoning in reaching the decision to terminate Sergeant Logan: he found that no violent felony was being committed; that Mr. Logan had not exhausted all reasonable means of apprehension prior to firing his weapon; and that there was no immediate danger. Deputy Chief Crews cited other deadly force policy violations: Mr. Logan failed to give a verbal warning before shooting and did not think about having a clear line of fire, a requirement any time deadly force is used. Deputy Chief Crews testified that when he asked Sergeant Logan if he had thought of having a clear line of fire, he had responded that he had not. In its written decision dated November 20, 1998, the Commission upheld the Department's termination of Sergeant Logan and noted that, even though the Burglary file was not before Deputy Chief Crews when he decided to terminate Sergeant Logan's employment, the report would not have influenced the outcome. Although the written decision does not reflect this fact, substantial portions of the Burglary file had been introduced into evidence as separately numbered exhibits, and counsel for Sergeant Logan had expressly elected *not* to introduce the balance of it.[3] The Commission further noted that it agreed with Deputy Chief Crews's conclusion that Sergeant Logan was not credible.

Sergeant Logan then sought review in chancery court, again taking issue with Deputy Chief Crews's failure to review the Burglary Squad file. The chancellor remanded the case for consideration of the Burglary Squad file because he found the Commission's finding - - that consideration of this file would not have altered the outcome - - to be unsupported in the record. On remand, the Civil Service Commission re-affirmed the Department's action after considering the entire Burglary Squad file and argument from counsel.

Sergeant Logan again sought review in the chancery court by filing a petition for writ of certiorari. He asserted that the Commission's decision was arbitrary, not supported by substantial

---

[3]Shoot File 09-96 contained several portions of the Burglary File, was reviewed by Deputy Chief Crews at the pre-termination hearing, and was admitted as Exhibit 7 during the first hearing before the Commission. In addition, Sergeant Logan's counsel introduced Exhibits 11, 12, and 13 into evidence before the Commission. These exhibits were originally part of the Burglary File and included, respectively, the Burglary Bureau Report, Mrs. Glover's second statement, and Ms. Jefferson's second statement.

and material evidence, and violative of his 5th and 14th amendment rights under the United States Constitution. He later moved for a default judgment on the basis that the City had filed no responsive pleading, but the trial court denied the motion. After reviewing the entire record, including the transcript from the first hearing before the Civil Service Commission, Chancellor Arnold Goldin upheld the Commission's decision for the following reasons:

(1) The Burglary Squad file was not complete at the time of the pre-termination hearing;

(2) Counsel for Mr. Logan decided not to enter the Burglary Squad file into evidence for the Civil Service Commission's review in the first appeal because substantial portions of it had already been admitted as separate, numbered exhibits; and

(3) Even if there were a due process violation, the Civil Service Commission's review of the file on the second appeal would have cured it.

Following the trial court's entry of this order on January 16, 2007, Sergeant Logan then filed a timely notice of appeal.

### *Issues Presented*

Sergeant Logan has raised the following issues for review on appeal:

(1)     Whether the Memphis Police Department violated Logan's procedural and substantive due process rights under Tennessee state statutes during [conducting the] administrative hearing at the Memphis Police Department;

(2)     Whether the Memphis Police Department or the Civil Service Commission applied the proper legal standards relative to the Tennessee state law of self defense and defense of others to Logan's actions;

(3)     Whether [Logan] received a fair and impartial hearing before the Memphis Civil Service Commission;

(4)     Whether the Civil Service Commission properly followed the instructions of the Chancery Court occasioned by an earlier remand of this matter back to them for reconsideration;

(5)     Whether the Trial Court erred in refusing to grant Logan a default judgment in his Petition for Certiorari; and

(6)     Whether the Trial Court erred in finding the action of the Civil Service Commission was not arbitrary and capricious.

The Commission, on the other hand, presents the following issue for review:

> Whether the Chancery Court was correct in concluding . . . that the Civil Service Commission . . . did not act arbitrarily, capriciously, illegally or unlawfully in upholding the termination of Logan, and that there was both substantial and material evidence in the record to sustain the Civil Service Commission's decision to uphold [the] termination for violation of the [Department's] deadly force policy when he shot an unarmed man in the back, leaving him paralyzed from the waist down.

### *Standard of Review*

#### *Applicable Standard for the Trial and Appellate Courts*

This is an appeal from the trial court's judgment rendered pursuant to the provisions for judicial review set forth in title 27, chapter 9 of the Tennessee Code. *See* Tenn. Code Ann. §§ 27-9-101 to -114 (2000 & Supp. 2006). This review is available following a proceeding conducted before a civil service board that affects a civil servant's employment status. *See* § 27-9-114; *Tidwell v. City of Memphis,* 193 S.W.3d 555, 559 (Tenn. 2006). The application of these provisions requires compliance with the standards of the Uniform Administrative Procedures Act (UAPA), including the judicial standards of review set forth in Tennessee Code Section 4-5-322. Tenn. Code Ann. § 27-9-114(b)(1). Under the UAPA, administrative agency decisions are subject to review in chancery court, without a jury, and limited to the administrative record. Tenn. Code Ann. § 4-5-322(g) (2005 & Supp. 2006) (providing, however, that review of procedural errors is not limited to the administrative record). Subsection (h) specifies the scope of judicial review as follows:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A) Unsupported by evidence which is both substantial and material in light of the entire record.
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h) (2005).

Upon confirming that an agency has employed the proper legal principles in the case under review, this Court must then consider the disputed factual findings and address whether the agency had a reasonably sound basis for making those findings. *See McEwen v. Tenn. Dept. of Safety*, 173 S.W.3d 815, 820 (Tenn. Ct. App. 2005). Like the trial court, this Court applies the substantial and material evidence standard in reviewing the agency's findings of fact. *Bobbitt v. Shell,* 115 S.W.3d 506, 509–10 (Tenn. Ct. App. 2003). Substantial and material evidence is "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the actions under consideration." *Dickson v. City of Memphis Civil Svc. Comm'n*, 194 S.W.3d 457, 464 (Tenn. Ct. App. 2005); *Pruitt v. City of Memphis,* No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005)(*no perm. app. filed*); *Bobbitt*, 115 S.W.3d at 510.

As directed by the statute, we take into account whatever in the record fairly detracts from the weight of the evidence, but we may not substitute our own judgment on questions of fact by re-weighing the evidence. *See* Tenn. Code Ann. § 4-5-322(h)(5)(B). When the agency conducts a hearing and can evaluate the witnesses as they testify, this Court gives the tribunal's credibility determinations great weight. *Pruitt*, 2005 WL 2043542, at *7. Moreover, the substantial and material evidence standard does not justify reversal of an administrative decision only because the evidence could also support another result. *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001). Rather, we may reject an administrative determination only if a reasonable person would necessarily arrive at a different conclusion based on the evidence. *Id.*

Importantly, this Court may reverse, remand, or modify an agency decision only where the agency's error has affected the merits of its decision. Tenn. Code Ann. § 4-5-322(I).

### *The Standard of Review for the Civil Service Commission*

Section 246 of the Charter of the City of Memphis provides that "[t]he City may terminate, suspend, or demote an employee for just cause, and the employee shall be given a written notice of the reasons for the action" taken. Charter of City of Memphis §246 (renumbered as section 7 under article 34 by ordinance number 3233, adopted Aug. 31, 1982). Moreover, when an employee appeals to the Civil Service Commission for a review of disciplinary action, section 248 provides that "[t]he burden of proof required to sustain the action of the City shall be by a preponderance of the evidence. If, after a presentation of the proof, the commission finds that there exists a reasonable basis for the disciplinary action taken, the action of the City shall be sustained." Charter of City of Memphis §248 (renumbered as section 9 under article 34 by ordinance number 3233, adopted Aug. 31, 1982). The Civil Service Commission was required to determine whether the City had shown, by a preponderance of the evidence, a reasonable basis for its decision to terminate the employment of Sergeant Logan.[4]

---

[4]We note that Sergeant Logan contends that the provisions of Tennessee Code Annotated sections 38-8-301 through -310 govern the disciplinary process in question and that those standards were violated in his case. Yet,

(continued...)

*Analysis*

*The Burglary File*

In essence, Sergeant Logan argues that Deputy Chief Crews's failure to consider the Burglary Squad file during his pre-termination hearing violated his due process rights. Sergeant Logan frames this grievance in two ways: an error of omission at the pre-termination hearing and an error by the Commission on remand.

Sergeant Logan argues that Deputy Chief Crews's failure to review the Burglary File at the pre-termination hearing constituted a breach of the Memphis Police Department's own policy and therefore violated his right to due process. Specifically, he cites paragraph (f) of the Internal Integrity section of the Memphis Police Department's Manual of Policy and Procedures:

> **Further Investigation:**
> Upon notification that a Statement of Charges is to be resolved at a particular level of Administering Authority, it will be the responsibility of the Commander of that level to initiate action to provide the accused officer with a full, impartial hearing. It will be the responsibility of the Commanding Officer to use all pertinent information, facts, letters, and report available to him to ensure a full hearing.

In Logan's second appeal to chancery court, the chancellor found that the report was not available to Deputy Chief Crews at the time of the pre-termination hearing because it was not yet complete; thus, his failure to review it did not constitute, per se, unlawful procedure. The chancellor concluded that even if this omission at the administrative level had been an error of constitutional dimension, the Commission's review of the entire Burglary file on remand would have cured it. We agree and emphasize that even if the City had violated its own policy, such a violation does not necessarily rise to the level of a constitutional violation.

Under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), due process requires that a public employee who can be discharged only for cause[5] must be given notice and an

_____

[4](...continued)
Tennessee Code Annotated section 38-8-309 states as follows:

> This part shall apply only to those agencies that now provide a property interest in employment for their police officers and that have no other established procedures for dealing with the dismissal, demotion, suspension or transfer for punitive reasons of police officers.

Tenn. Code Ann. § 38-8-309(2006). These Code provisions do not apply in this case.

[5]The parties do not dispute that, as an officer of the Memphis Police Department, Sergeant Logan could be dismissed from his employment only for just cause. *See* Charter of City of Memphis §246 ("The City may terminate, suspend or demote an employee for just cause."). Thus, he possessed a property interest in his continued employment
(continued...)

opportunity to respond to the charges against him prior to termination. *Loudermill*, 470 U.S. at 546. The gravity of depriving a person of his employment mandates a pre-termination hearing to provide the employee an opportunity to respond to the charges against him. *Id.* at 545-46. The pre-termination hearing must afford the employee an opportunity to present his side of the story and serves as an "initial check against mistaken decisions." *Id.* at 545. The informality of the pre-termination hearing, however, is balanced by a full post-termination hearing, and "the existence of post-termination procedures is relevant to the necessary scope of pre-termination procedures." *Id.* at 547 n.12. *Loudermill* and its progeny have recognized that where the pre-termination hearing has been less than a full evidentiary hearing, a more formal post-termination hearing is required. *Id.*; *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 261–62 (1987). The pre-termination and post-termination procedures are intertwined and must be reviewed together to determine whether due process has been satisfied. *See, e.g., Carter v. Western Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270, 273 (6th Cir.1985).

The record reflects that Sergeant Logan attended the pre-termination hearing and gave a statement. It also indicates that Deputy Chief Crews reviewed Shoot File 09-96 several times and that it included material also present in the Burglary Squad File. Moreover, Sergeant Logan appealed his termination to the Commission, which conducted a formal, two-day hearing and concluded there was a reasonable basis for the City's action.

At the first hearing before the Commission, Sergeant Logan's attorney introduced into evidence the additional statements of Mrs. Glover and Ms. Jefferson taken pursuant to the Burglary Bureau investigation. Even though the Security Squad had already taken statements from both women at the scene the same day of the incident, included the statements in Shoot File 09-96, and submitted them for Deputy Chief Crews's review, the Commission allowed Sergeant Logan to introduce these later statements into evidence. The Chairman of the Commission then asked if Sergeant Logan wanted to introduce anything else from the Burglary Squad file into evidence, and his attorney stated, "[w]ell, I thought about putting the whole file in evidence, but some of that is duplicitous[6] so I decided this morning against that."

Aside from the statements of Mrs. Glover and Ms. Jefferson, the only other item of significance in the file - - indeed, the only one highlighted by Sergeant Logan on appeal - - is the Burglary Bureau's conclusion that Mr. Glover committed aggravated burglary and aggravated assault that evening. Sergeant Logan contends that deadly force was authorized because Mr. Glover was in the process of committing a dangerous felony when Logan discharged the weapon.

Even assuming this to be true, we still find substantial and material evidence to support the Commission's decision. Indeed, we remain mindful of our standard of review: we may reverse,

[5](...continued)
which could not be deprived by the State without due process. *Loudermill*, 470 U.S. 532, 538-39 (1985).

[6]Although the transcript uses the term "duplicitous," we believe the speaker intended to use, or did use, the word "duplicative." Whether the information was deceptive ("duplicitous") or already in evidence and thus redundant ("duplicative"), it is clear that Sergeant Logan elected to proffer only certain portions of the file in this hearing.

modify, or remand the decision only where a violation at the administrative level has affected the merits of the decision. *See* Tenn. Code Ann. § 4-5-322(I). A harmless error committed by administrative agencies cannot form the basis for a reversal, remand, or modification of its decision. *Id.*; *Bishop v. Tenn. Bd. of Accountancy,* 905 S.W.2d 939, 942 (Tenn. Ct. App. 1995). Indeed,

> [i]f the reviewing court finds that the essential rulings of the Board are correct as a matter of law and that any necessary factual findings are based upon substantial and material evidence, then the Board's decision must be affirmed even if other errors may be found.

*Bishop*, 905 S.W.2d at 942. The essential ruling of the Commission was that, even considering the entire Burglary File, there was a reasonable basis for terminating Sergeant Logan. Sergeant Logan does not dispute that a violation of the deadly force policy provides a reasonable basis for termination. The primary question, then, is whether a preponderance of the evidence supported a finding that Sergeant Logan violated the policy.

We conclude that the evidence in the record, including the entire Burglary File, clearly establishes that Sergeant Logan had not exhausted all other reasonable means of apprehension or prevention before using deadly force. Sergeant Logan's chief argument pertains to whether a violent felony was occurring at the time, but even if it were, he could not use deadly force before exhausting all other reasonable alternatives. Even if Mr. Glover intended to harm his wife or mother-in-law, the bedroom door still separated him from them. It appears there was no *immediate* need for deadly force at that moment. Furthermore, even assuming that Sergeant Logan was incapacitated as he claims he was, there is no dispute that Mr. Glover did not attempt to take his gun or to injure him any further. Mr. Glover was not armed at the time Sergeant Logan shot him in the back.

Most striking, however, is that Sergeant Logan failed to warn Mr. Glover that he would use deadly force if he proceeded into the bedroom. The record abundantly supports this conclusion, and even Sergeant Logan testified that, prior to discharging the weapon, the only thing he said was, "Melvin, please stop. Don't go in there." Sergeant Logan testified that after this statement, "[Mr. Glover] hit the door again, and this time it almost gave all the way. And I fired one time at the center of his back." Nothing in the record suggests that Mr. Glover had reason to believe Sergeant Logan would take this action.

Although the Civil Service Commission did consider the entire Burglary File on remand and re-affirm its prior decision, Sergeant Logan contends that it was error for the Commission to review only the file, without the introduction of further testimony. Sergeant Logan argues that two members of the Commission were new and had not participated in the prior proceedings, thus requiring a fresh look at the evidence and new credibility determinations on remand. We find this argument unpersuasive, first and foremost because Sergeant Logan expressly elected not to introduce the entire file in the first hearing before the Commission. Further, we fail to see how consideration of the Burglary File portions not already in evidence before the first Commission would alter any credibility findings on remand.

-11-

*Application of the Wrong Standards Under State Law*

Emphasizing his statutory duty to arrest and to protect innocent citizens, Sergeant Logan additionally contends that the Memphis Police Department and the Commission erred by failing to consider state statutes addressing self-defense and defense of others. Sergeant Logan asserts that the Tennessee Code allows citizens to use deadly force in self defense when defending their homes, *see* Tenn. Code Ann. § 39-11-611, and in the defense of others, *see* Tenn. Code Ann. § 39-11-612. He argues that his actions were justified under this provision and, furthermore, that he could have faced charges for neglect of duty had he not used deadly force.

We first note that the Commission was required to determine whether Sergeant Logan violated the Department's deadly force policy and whether there was a reasonable basis for terminating his employment. The statutes he cites pertain to criminal prosecutions, not to the termination of public employment. Were he on trial for a criminal offense, these provisions would certainly become relevant. Further, one basis for termination is that Sergeant Logan failed to resort to other means of stopping Mr. Glover's suspected assault on his wife and mother-in-law before using deadly force. Contrary to his suggestion, pursuit of other alternatives would not amount to a neglect of his duty to protect innocent citizens.

*Denial of Motion for Default Judgment*

Sergeant Logan argues that the trial court erred by denying his motion for default judgment. We review a trial court's denial of a motion for default judgment under an abuse of discretion standard. *Broyles v. Woodson*, No. E2004-00402-COA-R3-CV, 2005 WL 378929, at *6 (Tenn. Ct. App. Feb. 17, 2005)(*no perm. app. filed*); *see Reynolds v. Battles*, 108 S.W.3d 249, 251 (Tenn. Ct. App. 2003). After the Commission re-affirmed its decision on remand in January of 2001, Sergeant Logan again petitioned for a writ of certiorari in March of 2001. Nothing occurred for over four years. In early 2005, Sergeant Logan apparently terminated the services of his attorney. When that attorney received notice of the Commission's motion to dismiss for failure to prosecute, he moved to withdraw as counsel for Sergeant Logan. The trial court conducted a hearing on May 13, 2005, denied the Commission's motion to dismiss, and granted Sergeant Logan thirty (30) days to hire new counsel.

Sergeant Logan's new counsel filed a motion for default judgment in July of 2005, arguing that the Commission had failed to file a responsive pleading and failed to transmit the transcript as required by the Tennessee Code. The record reflects that the Commission filed an answer and transmitted the record within two months of the filing of the motion. The Commission asserted that Sergeant Logan filed his memorandum in support of default judgment nine (9) months after filing the motion itself and that it, not Sergeant Logan, had placed the case on the ten-day rule docket for

trial on the merits.  In light of this history,[7] our standard of review, and our law's clear preference for an adjudication upon the merits, *see Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn. 2003), we decline to interfere with the trial court's discretion on this point.

For the foregoing reasons, we affirm the judgment of the trial court.  Costs of this appeal are taxed to the Appellant, Robert T. Logan, Jr., and his surety, for which execution shall issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[7]We also cannot overlook the fact that Sergeant Logan's chief grievance on appeal, the omission of the Burglary File in his pre-termination hearing, stemmed from an alleged error he expressly chose not to cure at the first hearing.