
IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 19, 2017 Session

## PAVEMENT RESTORATIONS INC. v. THOMAS E. RALLS, ET AL.

**Appeal from the Chancery Court for Gibson County**
**No. 21757     George R. Ellis, Chancellor**

_____

**No. W2016-01179-COA-R3-CV**

_____

Employee's employment was terminated for smoking in a company truck in violation of the employer's rule. Employee's initial request for unemployment benefits was denied. The Appeals Tribunal affirmed the denial of benefits, but the Commissioner's Designee later reversed, finding that employee's conduct was exempt from the definition of misconduct and concluding that the employee was, therefore, not terminated for work-related misconduct as defined in the unemployment compensation statutes. On appeal to the chancery court, the trial court concluded that evidence in the record supported the Commissioner's Designee's decision. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which BRANDON O. GIBSON, and KENNY ARMSTRONG, JJ., joined.

Michael R. Hill, Milan, Tennessee, for the appellant, Pavement Restorations, Inc.

Herbert H. Slatery, III, Attorney General and Reporter; W. Derek Green, Assistant Attorney General for the appellees, Burns Phillips, Commissioner, Tennessee Department of Labor & Workforce Development.

## OPINION

### BACKGROUND

Defendant/Appellee Thomas E. Ralls ("Mr. Ralls") was employed as a field laborer with Pavement Restorations, Inc. ("Pavement Restorations") from September 28, 2011, until the termination of his employment on March 9, 2015. On March 16, 2015, Mr. Ralls filed a claim for unemployment benefits. The Defendant/Appellee Tennessee

Department of Labor and Workforce Development ("the Department") rendered its initial decision on March 25, 2015, finding that Mr. Ralls had been discharged for work-related misconduct and was thus not entitled to receive unemployment benefits. On April 1, 2015, Mr. Ralls appealed the decision to the Department's Appeals Tribunal.

The hearing officer for the Appeals Tribunal conducted a telephonic hearing on April 22, 2015. Neither Mr. Ralls nor Pavement Restorations was represented by counsel during the hearing. Instead, Mr. Ralls appeared on his own behalf, and Pavement Restorations' president and co-owner, Jon Hargett, appeared on its behalf.

Mr. Hargett testified first, explaining that another co-owner[1] noticed an employee smoking in the back of a company crew cab truck on the crew's return trip from a job site to the Pavement Restorations shop. According to Mr. Hargett, the co-owner informed him that "someone in the back seat" was smoking and requested that he "find out who was in that truck." Mr. Hargett's account thereafter is as follows:

> And so, I called the – the foreman on the job that was driving the truck to find out who was sitting in the back seat. And so, that was – they were about five minutes from the office. When they got here and [Mr. Ralls] came inside, I told him I needed to talk to both of them and he came inside and said he was embarrassed that he – he had fallen asleep on the way home and when he woke up, he just pulled out a cigarette and lit up and had only taken a couple of puffs off of it and then threw it out. So, but that's against ou[r] policy. So, due to that and the previous instances of violations of things, that I did the separation notice based on that.

Mr. Hargett further clarified that the "previous instances of violations" referenced Mr. Ralls's four instances of tardiness in 2014. Mr. Hargett testified that Mr. Ralls was aware of the rules because they are located in the company handbook given to all employees and that employees are subject to termination upon even a single violation of any of the rules. Mr. Hargett added that Pavement Restorations had just discussed the no-smoking rule during an annual safety meeting only one month prior to the termination Mr. Ralls's employment.[2]

Mr. Ralls testified that he had received "verbal warnings maybe twice in one year." Although Mr. Ralls concedes that he was aware of the company's no-smoking policy in company vehicles, Mr. Ralls asserted that "everybody at the company smokes and they all smoke in the vehicle." According to Mr. Ralls's account:

---

[1] From what we can discern from the record, the other co-owner appears to be Mr. Hargett's wife.

[2] An exhibit in the record indicates that Mr. Ralls attended the February 20, 2015 safety training meeting.

Well, I had just woken up and that's just, you know, when you wake up, that's what I – what I did and then I remembered and I threw it out. We was almost to the shop because I'm not trying to smoke in the vehicles. I was usually awake the whole time, you know, and I wait till we get to where we're going or whatever, but I mean, I don't think it's misconduct.

On April 24, 2015, the Appeals Tribunal issued a written decision affirming the Department's decision. On May 14, 2015, Mr. Ralls appealed the decision to the Commissioner's Designee. On May 21, 2015, Mr. Hargett signed and returned an acknowledgment of appeal form wherein he indicated that Pavement Restorations did not "wish to have another hearing to present additional evidence." On June 1, 2015, the Commissioner's Designee reversed the Appeals Tribunal's decision, finding the following:

> The record establishes that [Mr. Ralls] had received one prior warning which was issued because [he] was tardy four times in 2014. [Pavement Restorations] had recently discussed the prohibition against smoking in company vehicles, though [Mr. Ralls] noted that most employees smoked and most smoked in the company vehicles, even his supervisor.
> [Mr. Ralls] was in the back seat of company vehicle and fell asleep. When he woke up, he lit a cigarette out of habit but immediately realized what he had done and threw it out. [Pavement Restorations] learned about [Mr. Ralls] lighting the cigarette and discharged him.

Based upon these facts, the Commissioner's Designee made the following conclusions of law:

> . . . [T]he Appeals Tribunal incorrectly applied the law under T.C.A. § 50-7-303(a)(2).
> There is insufficient evidence that [Mr. Ralls's] discharge was for disqualifying misconduct. The record establishes that one warning had been issued to [Mr. Ralls] in his three and a half year employment and the warning was not at all related to the infraction leading to . . . his discharge. His accidental, habit-based lighting of a cigarette before immediately throwing it out is not misconduct in this case. It seems that this infraction was an isolated incident without harmful intent.

As a result, the Commissioner's Designee concluded that Mr. Ralls was eligible for unemployment benefits under Tennessee Code Annotated section 50-7-303(a)(2).

Mr. Hargett, on Pavement Restorations' behalf, filed a petition to rehear the Commissioner's Designee's decision on June 10, 2015, claiming that the "facts [had] been distorted by [Mr. Ralls]" and describing additional evidence that was not introduced

- 3 -

at the April 22, 2015 hearing.  Specifically, Mr. Hargett asserted that the other co-owner witnessed Mr. Hargett smoking for a total of 4.7 miles before he disposed of the cigarette. The Commissioner's Designee denied Pavement Restorations' petition on June 16, 2015, noting that Pavement Restorations "ha[d] not explained why this information, if relevant, was not presented during the Appeals Tribunal hearing as required" and concluding that Pavement Restorations was "essentially requesting a second opportunity to meet its burden of proof."

On July 27, 2015, Pavement Restorations timely filed a petition for judicial review of the agency decision in the Gibson County Chancery Court.  The trial court heard oral argument on Pavement Restorations' petition on April 18, 2016.  By order of May 10, 2016, the trial court affirmed the Commissioner's Designee's decision, concluding that there was evidence in the record to support the findings of the Commissioner's Designee and a reasonable basis in law for its decision to award unemployment benefits to Mr. Ralls.  This appeal followed.

## ISSUES

Pavement Restorations raises two issues for review, which we have slightly restated, as follows:

1. Whether the Commissioner's Designee and the trial court erred in ruling that Mr. Ralls was not guilty of misconduct for violating Pavement Restorations' known policy.

2. Whether the Commissioner's Designee acted arbitrarily and capriciously by denying Pavement Restorations' petition to rehear.

## STANDARD OF REVIEW

Tennessee Code Annotated section 50-7-304(i) contains the standards by which chancery courts are to review administrative decisions involving claims for unemployment compensation. This Court employs the same standard of review applicable to the trial court. *See Armstrong v. Neel*, 725 S.W.2d 953, 955 & n.1 (Tenn. Ct. App. 1986). Tennessee Code Annotated section 50-7-304(i)(2) provides that:

The [court] may affirm the decision of the commissioner or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(A) In violation of constitutional or statutory provisions;
(B) In excess of the statutory authority of the agency;
(C) Made upon unlawful procedure;

- 4 -

(D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(E) Unsupported by evidence that is both substantial and material in the light of the entire record.

The issue in this case concerns whether the agency's decision was supported by substantial and material evidence. Courts "generally interpret the substantial and material evidence requirement as requiring 'something less than a preponderance of the evidence, but more than a scintilla or glimmer.'" *Dickson v. City of Memphis Civ. Serv. Comm'n*, 194 S.W.3d 457, 464 (Tenn. Ct. App. 2005) (quoting *Wayne Cnty. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988) (citations omitted)). "Substantial evidence is not limited to direct evidence but may also include circumstantial evidence or the inferences reasonably drawn from direct evidence." *Wayne Cnty.*, 756 S.W.2d at 280 (citing *Radio Officers Union v. NLRB*, 347 U.S. 17, 49, 74 S. Ct. 323, 340, 98 L. Ed. 455 (1954)). "An agency's factual determination should be upheld if there exists 'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Id.* at 279 (quoting *Southern Ry. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984)). In addition, Tennessee Code Annotated section 50-7-304(i)(3) provides:

> In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the commissioner's designee as to the weight of the evidence on questions of fact. No decision of the commissioner's designee shall be reversed, remanded or modified by the chancellor, unless for errors that affect the merits of the final decision of the commissioner's designee.

### DISCUSSION

The first issue raised by Pavement Restorations is a question of statutory construction. Accordingly, we are guided by the following "familiar rules of statutory construction" as outlined by the Tennessee Supreme Court:

> A court's primary aim "is to carry out legislative intent without broadening or restricting the statute beyond its intended scope." *Lind* [*v. Beaman Dodge, Inc.*], 356 S.W.3d [889,] 895 [(Tenn. 2011)]. Courts presume that every word in a statute has meaning and purpose and that these words "should be given full effect if the obvious intention of the General Assembly is not violated by so doing." *Id.* Words "must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Mills* [*v. Fulmarque, Inc.*], 360

S.W.3d [362,] 366 [(Tenn. 2012)]. When the meaning of a statute is clear, "[courts] apply the plain meaning without complicating the task" and enforce the statute as written. *Lind*, 356 S.W.3d at 895. At the same time, courts "must be circumspect about adding words to a statute that the General Assembly did not place there." *Coleman v. State*, 341 S.W.3d 221, 241 (Tenn. 2011).

We are also cognizant that "statutes 'in pari materia'—those relating to the same subject or having a common purpose—are to be construed together, and the construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010) (quoting *Wilson v. Johnson Cnty.*, 879 S.W.2d 807, 809 (Tenn. 1994)). Courts must adopt the most "reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws." *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn. 1997). Even though "'the rules of civil procedure are not statutes, the same rules of statutory construction apply.'" *Lind*, 356 S.W.3d at 895 (alteration in original) (quoting *Thomas v. Oldfield*, 279 S.W.3d 259, 261 (Tenn. 2009)).

Additionally, "new statutes change pre-existing law only to the extent expressly declared." *State v. Dodd*, 871 S.W.2d 496, 497 (Tenn.Crim.App.1993); *see also In re Deskins' Estates*, 214 Tenn. 608, 381 S.W.2d 921, 922 (1964). A statute "'not repealing directly or by implication any previous law, is cumulative to such law' and 'repeals by implication are not favored.'" *McDaniel v. Physicians Mut. Ins. Co.*, 621 S.W.2d 391, 394 (Tenn. 1981) (alteration in original) (quoting *Hibbett v. Pruitt*, 162 Tenn. 285, 36 S.W.2d 897, 900 (1931)). Indeed, we presume that the Legislature knows the law and makes new laws accordingly. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010).

*Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013). Essentially, Pavement Restorations argues that a somewhat recent change in the statute governing unemployment benefits defining the term "misconduct" negates an earlier adopted provision in the statute in which certain activities are specifically exempted from the definition of misconduct. Respectfully, we cannot agree.

Tennessee Code Annotated section 50-7-303(a)(2)(A) provides that "[a] claimant shall be disqualified for [unemployment] benefits: . . . [i]f the administrator finds that a claimant has been discharged from the claimant's most recent work for **misconduct** connected with the claimant's work[.]" Tenn. Code Ann. § 50-7-303(a)(2)(A) (emphasis added). A definition of "misconduct" was added to the unemployment compensation statutes, Tennessee Code Annotated section 50-7-303(b)(3), effective January 1, 2010, by Chapter 479 of the 2009 Public Acts of Tennessee:

(A) "Misconduct" includes, but is not limited to, the following conduct by a claimant:

(1) Willful or wanton disregard of the rights or interests of the employer;

(2) Deliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee;

(3) Carelessness or negligence of such a degree or recurrence to show an intentional or substantial disregard of the employer's interest or to manifest equal culpability, wrongful intent or evil design;

(B) In addition to the provisions of subdivision (A), "misconduct" also includes any conduct by a claimant involving dishonesty arising out of the claimant's employment that constitutes an essential element of a crime for which the claimant was convicted.

(C) "Misconduct" does not include:

(1) Inefficiency, or failure to perform well as the result of inability or incapacity;

(2) Inadvertence or ordinary negligence in isolated instances; or

(3) Good faith errors in judgment or discretion[.]

Clearly, this provision defines misconduct in subdivision (A) then provides certain specific exemptions from the definition in subdivision (C).

In 2012, effective September 1, 2012, by Chapter 1050 of the 2012 Public Acts of Tennessee ("2012 Amendment"), section 50-7-303(b)(3), was amended by deleting subdivision (A) in its entirety and substituting in its place the following:

(A) "Misconduct" includes, but is not limited to, the following conduct by a claimant:

(i) Conscious disregard of the rights or interests of the employer;

(ii) Deliberate violations or disregard of reasonable standards of behavior that the employer expects of an employee;

(iii) Carelessness or negligence of such a degree or recurrence to show an intentional or substantial disregard of the employer's interest or to manifest equal culpability, wrongful intent or shows an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employee's employer;

(iv) Deliberate disregard of a written attendance policy and the discharge is in compliance with such policy;

- 7 -

(v) A knowing violation of a regulation of this state by an employee of an employer licensed by this state, which violation would cause the employer to be sanctioned or have the employer's license revoked or suspended by this state; or

(vi) A violation of an employer's rule, unless the claimant can demonstrate that:

> (a) The claimant did not know, and could not reasonably know, of the rule's requirements; or
> (b) The rule is unlawful or not reasonably related to the job environment and performance[.]

Essentially, the 2012 Amendment reworded the existing provisions and added subparts (iv) through (vi) to the definition of misconduct in subdivision (A). Significantly, the provision exempting certain conduct from the definition of misconduct remained intact, albeit moved to subdivision (D). For reference, the current version of section 50-7-303(b)(3) reads, in relevant part:

(A) **"Misconduct" includes, but is not limited to, the following conduct by a claimant**:

(i) Conscious disregard of the rights or interests of the employer;
(ii) Deliberate violations or disregard of reasonable standards of behavior that the employer expects of an employee;
(iii) Carelessness or negligence of such a degree or recurrence to show an intentional or substantial disregard of the employer's interest or to manifest equal culpability, wrongful intent or shows an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employee's employer;
(iv) Deliberate disregard of a written attendance policy and the discharge is in compliance with such policy;
(v) A knowing violation of a regulation of this state by an employee of an employer licensed by this state, which violation would cause the employer to be sanctioned or have the employer's license revoked or suspended by this state; or
**(vi) A violation of an employer's rule, unless the claimant can demonstrate that:**

> **(a) The claimant did not know, and could not reasonably know, of the rule's requirements; or**
> **(b) The rule is unlawful or not reasonably related to the job environment and performanc**e;

* * *

**(D) "Misconduct" does not include**:

> (1) Inefficiency, or failure to perform well as the result of inability or incapacity;
> **(2) Inadvertence or ordinary negligence in isolated instances**; or
> (3) Good faith errors in judgment or discretion[.]

(emphasis added). Accordingly, the current version of this statute again defines misconduct in subdivision (A) while providing certain specific exemptions from the definition in subdivision (D).

Here, Pavement Restorations somewhat confusingly argues that, in relying on subdivision (D)'s exemptions, the Commissioner's Designee "appears to analyze the definition of misconduct prior to the enactment of the statutory definition of misconduct" at issue in this case. We simply cannot agree. Pavement Restorations' interpretation of section 50-7-303(b)(3) essentially requires that this Court define misconduct pursuant to subdivision (A) to the complete exclusion of the language provided in subdivision (D). The current statute in effect both at the time of the termination of Mr. Ralls's employment and this appeal provides both a provision defining misconduct as, *inter alia*, a violation of an employer's rules and an exemption from the definition of misconduct when the complained-of misconduct resulted from, *inter alia*, "[i]nadvertence or ordinary negligence in isolated circumstances." Tenn. Code Ann. § 50-7-303(b)(3). The Tennessee Supreme Court has directed that courts must "construe all provisions of [a] statute consistently and reasonably, and . . . give effect to every sentence, clause, and word in the statute." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 530 (Tenn. 2010). Indeed, the Tennessee Supreme Court has held that "it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning." *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503 (Tenn. 2004). Moreover, the more recent amendment of subsection (A) does not indicate that we should ignore the exemption to the definition of misconduct simply because it was enacted earlier; as previously discussed, "'new statutes change pre-existing law only to the extent expressly declared.'" *Johnson*, 432 S.W.3d at 848 (quoting *Dodd*, 871 S.W.2d 497). As such, we cannot read subdivision (A) in isolation; it must be construed given the language of the entire section.

Furthermore, section 50-7-303(b)(3)(A), defining what misconduct "includes, but is not limited to, the following conduct[,]" indicates that the provided list is non-exhaustive and may include any other conduct not specifically mentioned in the statute. Section 50-7-303(b)(3)(A), therefore, contemplates that the definition of misconduct may encompass a broader scope than expressly stated. Section 50-7-303(b)(3)(D), however, provides for a very narrow and limited list of what actions are specifically exempt from the definition of misconduct, allowing three—and only three—exemptions from the rule. Thus, it appears that section 50-7-303(b)(3)(D) is the more narrow provision compared to

section 50-7-303(b)(3)(A). "Where a conflict is presented . . ., a more specific statutory provision takes precedence over a more general provision." **Graham v. Caples**, 325 S.W.3d 578, 582 (Tenn. 2010) (citing **Arnwine v. Union Cnty. Bd. of Educ.**, 120 S.W.3d 804, 809 (Tenn. 2003)). As this Court has explained:

> The reason and philosophy of the rule [giving effect to specific statutory provisions over general ones] is that where the mind of the legislature has been turned to the details of a subject and they have acted upon it, **a statute treating the subject in a general manner should not be construed as intended to affect the more particular provision**.

**Lambert v. Invacare Corp.**, 985 S.W.2d 446, 448 (Tenn. Ct. App. 1998) (quoting **Woodroof v. City of Nashville**, 183 Tenn. 483, 192 S.W.2d 1013, 1015 (Tenn. 1946)) (emphasis added). As a result, we, likewise, cannot ignore the more specific statutory section, section 50-7-303(b)(3)(D), as Pavement Restorations suggests; rather, the general provision providing for the definition of misconduct must give way to the more specific provision providing for the exemptions.

Although Pavement Restorations argues that previous opinions by this Court halted the analysis of whether a finding of misconduct under subdivision (A)(iv) justifies the denial of unemployment benefits, none of the cases cited by Pavement Restorations can be fairly read to hold that the analysis necessarily ends once a violation of an employer's rule has been found. *See* **Sanders v. Comm'r of Dep't of Labor & Workforce Dev.**, No. W2015-00796-COA-R3-CV, 2015 WL 5242924 (Tenn. Ct. App. Sept. 8, 2015) (concluding that substantial and material evidence supported the Commissioner's Designee's finding that claimant committed work-related misconduct when she invited another employee to "take [the argument] outside," constituting a physical threat or invitation to physical violence in violation of the employer's threatening behavior policy)[3]; **Sparkman v. Phillips**, No. M2013-01235-COA-R3-CV, 2014 WL 3058443, at *6 (Tenn. Ct. App. July 7, 2014) (concluding that claimant was terminated for work-related misconduct when she showed up to work smelling of alcohol and refused to take an alcohol test despite having received a warning that she would be terminated if she showed up to work smelling of alcohol again and refused to take an alcohol test); **Newman v. Davis**, No. W2013-00696-COA-R3-CV, 2014 WL 507100, at *10 (Tenn. Ct. App. Feb. 7, 2014) (concluding that, based on case law prior to the statutory enactment of misconduct in 2010, the finding of misconduct was sufficiently supported in the record when claimant failed to provide medical documentation excusing her prolonged absence from work even after receiving reminders by the employer that

---

[3] Pavement Restorations appears to have ignored the fact that the Commissioner's Designee acknowledged in **Sanders** that, although "a good faith error in judgment or discretion is not work connected misconduct [pursuant to T.C.A. § 50-7-303(b)(3),]" this exemption did not apply in this particular case. **Sanders**, 2015 WL 5242924, at *2.

she would be terminated based on her failure to do so); ***Hale v. Neeley***, 335 S.W.3d 599, 603 (Tenn. Ct. App. 2010), *perm. app. denied* (Apr. 13, 2011) (concluding that, based on case law prior to the statutory enactment of the definition of misconduct, claimant was discharged for work-related misconduct because he "breach[ed] of a duty owed to the employer, as distinguished from society in general[,]" by failing to report his conviction under a criminal drug statute to the employer within the requisite three day window).[4] From our review, the question of whether a section 50-7-303(b)(3)(D) exemption applied to negate the claim of misconduct was simply not asserted or addressed by the parties in any of these cases. These Opinions are, therefore, not instructive on the issue before this Court.

Consequently, in order to disqualify Mr. Ralls from unemployment benefits, the fact-finder must find (1) that Mr. Ralls's conduct qualifies as misconduct under the statute **and** (2) that Mr. Ralls's conduct is not nevertheless exempt from the definition of misconduct. Here, it is undisputed that Mr. Ralls lit a cigarette and smoked in the company truck, constituting a violation of the employer's rule. We, therefore, proceed to the next part of the analysis: whether Mr. Ralls's conduct is nevertheless exempt as contemplated under section 50-7-303(b)(3)(D). In order to resolve the second prong, we must determine whether substantial and material evidence supports the Commissioner's Designee's finding that Mr. Ralls's action is exempt from the definition of misconduct so as to qualify him for unemployment compensation. In this case, we cannot conclude that the Commissioner's Designee erred in finding that Mr. Ralls unintentionally and out-of-habit lit a cigarette when he woke up from a nap but almost immediately threw it out. At the Appeals Tribunal hearing, Mr. Hargett recalled that Mr. Ralls informed him that, on the trip back to the Pavement Restorations office, Mr. Ralls had fallen asleep, and, upon waking up, lit a cigarette, took "a couple of puffs," and then threw it out. Indeed, Mr. Ralls also testified that after he woke up, he lit a cigarette before "remember[ing] and . . . thr[owing] it out." "Findings of fact made by the agency may not be reviewed de novo by the trial or appellate courts, and courts should not substitute their judgment for that of the agency as to the weight of the evidence on factual issues." ***Sanifill of Tenn., Inc. v. Tenn. Solid Waste Disposal Control Bd.***, 907 S.W.2d 807, 810 (Tenn. 1995) (***Southern Ry. Co. v. Tenn. Bd. of Equalization***, 682 S.W.2d 196, 199 (Tenn. 1984)). This Court is not permitted to reweigh the evidence or substitute our judgment for that of the administrative agency. ***Miller v. Tenn. Bd. of Nursing***, 256 S.W.3d 225, 229 (Tenn. Ct. App. 2007). No evidence was presented showing that Mr. Ralls had violated the same rule in the past or that he had been given a warning not to smoke but deliberately ignored the warning. It appears from the record that Mr. Ralls's violation of the no-smoking policy was therefore an isolated incident, and his "previous instances of violations" referred to an unrelated matter of attendance. Given that the only evidence presented at

---

[4] This Court also acknowledged that "an employee's off-duty drug use (or even an off-duty arrest for drug possession) is not necessarily a breach of duty to the employer, even if the employer has a policy prohibiting the use of drugs on or off-duty." ***Hale***, 335 S.W.3d at 602.

the telephonic hearing was the testimony indicating that Mr. Ralls inadvertently lit the cigarette after waking from a nap,[5] and our limited review, we must conclude that the Commissioner's Designee did not err in finding that this action constitutes an "isolated incident without harmful intent." Accordingly, there is substantial and material evidence to support the Commissioner's Designee's finding that Mr. Ralls's action constitutes "[i]nadvertence or ordinary negligence in isolated instances" as it appears under 50-7-303(b)(3)(D)(2).

Pavement Restorations' next issue concerns whether the Commissioner's Designee's denial of its petition to rehear was arbitrary and capricious. Although the trial court did not explicitly rule on this issue, its order implicitly found that the Commissioner's Designee's denial of Pavement Restorations' petition to rehear was proper. We will therefore proceed to review this issue.

"The arbitrary or capricious standard requires a court to determine if the agency made a 'clear error in judgment.'" *A-1 Waste, LLC v. Madison Cnty. Mun. Solid Waste Planning Region Bd.*, No. M2013-02265-COA-R3-CV, 2015 WL 4594160, at *10 (Tenn. Ct. App. July 30, 2015) (quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110–11 (Tenn. Ct. App. 1993)). A decision is arbitrary if it is "not based on any course of reasoning or exercise of judgment" or if it "disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Jackson Mobilphone Co.*, 876 S.W.2d at 111. "The refusal . . . to grant a rehearing will not be found to be arbitrary or capricious unless the appellant can 'show specifically why [the appellant] was unable to procure the "newly discovered" evidence and that [the appellant] exercised due diligence in attempting to obtain the evidence prior to' the hearing." *Bridges v. Culpepper*, No. 02A01-9704-CH-00074, 1997 WL 589242, at *4 (Tenn. Ct. App. Sept. 24, 1997) (quoting *Brown v. Weik*, 725 S.W.2d 938, 947 (Tenn. App. Oct. 3, 1983)).

According to Pavement Restorations, the Commissioner's Designee's decision advised it of the right to petition for a rehearing, requiring only that Pavement Restorations explain why the claim should be reconsidered and include any new or additional evidence that Pavement Restorations wished to offer. Pavement Restorations argues that the decision did not inform Pavement Restorations that it needed to explain why the information was not presented during the Appeals Tribunal hearing. Pavement Restorations further argues that it "merely" followed the instructions it received from the Commissioner's Designee's opinion; however, the Commissioner's Designee denied reconsideration of Pavement Restorations' offer of additional evidence. Regardless of whether Pavement Restorations was on notice of the requirement that it present evidence regarding why it was "unable to procure the 'newly discovered' [or additional] evidence"

---

[5] As discussed, *infra*, Pavement Restorations attempts to introduce additional evidence not presented at the telephonic hearing regarding the duration of Mr. Ralls's violation.

at the time it filed its petition for rehearing, **Bridges**, 1997 WL 589242, at *4, the Commissioner's Designee's decision denying the rehearing clearly notified Pavement Restorations of its duty to show why it did not present this evidence at the earlier hearings. Even at this late date, however, after review in the trial court and this appeal, Pavements Restorations has still submitted no evidence to this Court showing why it did not present this evidence during any of the prior hearings.

Moreover, we note that the "additional" evidence that Pavement Restorations wished to introduce is not newly discovered evidence. Pavement Restorations does not dispute that the evidence—an eyewitness account of Mr. Ralls's purported violation— was within Pavement Restorations' exclusive control throughout the proceedings below.[6] Rather, Pavement Restorations argues that it should be allowed to introduce additional evidence to rebut the purportedly "distorted" evidence presented by Mr. Ralls. As previously discussed, however, Tennessee law requires that the appellant "show specifically why [the appellant] was unable to procure the newly discovered evidence and that [the appellant] exercised due diligence in attempting to obtain the evidence prior to the hearing." **Bridges**, 1997 WL 589242, at *4 (internal quotations omitted). Pavement Restorations has cited no law, nor has our research revealed any, in which this requirement was waived simply because the party seeking rehearing complains that the evidence at the prior hearing was "distorted." Thus, Pavement Restorations' contention otherwise is, respectfully, unavailing.

Despite Pavement Restorations' explanation that it, through its petition to rehear, only wants to correct Mr. Ralls's "distort[ion]" of the facts relating to how long he had been smoking, our review of the record reveals that Pavement Restorations had multiple opportunities to present evidence to refute Mr. Ralls's version of events before, during, and after the Appeals Tribunal hearing. First, prior to the Appeals Tribunal Hearing, both Pavement Restorations and Mr. Ralls received a document labeled "Appeals Tribunal Pre-Hearing Instructions," wherein each party was allowed to "bring witnesses who have first-hand knowledge of the issue." No reason was ever given to explain why the co-owner who purportedly witnessed the intentional smoking was absent from the Appeals Tribunal hearing. In addition, the testimony of Mr. Hargett, as Pavement Restorations' representative, included discussion of his conversation with Mr. Ralls, reciting that "he just pulled out a cigarette and lit up and had only taken a couple of puffs off of it and then threw it out" and that it was "against [Pavement Restorations'] policy." During his own testimony, Mr. Hargett had the opportunity to correct any misconception of the evidence

---

[6] The evidence Pavement Restorations wishes to introduce is somewhat contradictory to Mr. Hargett's own testimony at the Appeals Tribunal hearing. At the hearing, Mr. Hargett testified that the co-owner saw "someone" smoking and requested that Mr. Hargett find out who was in the truck. The "additional" information in the petition to rehear stated that the co-owner "recognized Mr. Ralls as the employee smoking in our company vehicle and called our office to notify me of the infraction."

to prove that Mr. Ralls had, in fact, smoked longer than he alleged. However, at no time during Mr. Hargett's testimony did he attempt to correct this "distorted fact."

Mr. Hargett again failed to present the omitted evidence after Mr. Ralls testified to the hearing officer. After Mr. Ralls's testimony wherein he purportedly "distorted" the facts, the hearing officer allowed Mr. Hargett to ask Mr. Ralls any questions regarding his testimony. Mr. Hargett, however, responded that he did not have any questions for Mr. Ralls.

Moreover, after the Appeals Tribunal hearing and Mr. Ralls's appeal to the Commissioner's Designee on May 14, 2015, Pavement Restorations failed to take advantage of another opportunity to correct the record when Mr. Hargett, on behalf of Pavement Restorations, signed and returned an acknowledgment of appeal form wherein he indicated that Pavement Restorations did not "wish to have another hearing to present additional evidence." Accordingly, the Commissioner's Designee made its decision based on the available evidence in the record.

Pavement Restorations asserts that the need for the additional evidence results from the fact that it was not aware of the alleged "distortion" until after the Commissioner's Designer's decision. This contention is simply implausible. As noted above, Pavement Restorations was given ample notice of the agency proceedings, and its representative fully participated in the Appeals Tribunal hearing in which Mr. Ralls allegedly wove his distorted story. As such, there can be no dispute that Pavement Restorations was on notice of the evidence presented during that hearing. We therefore determine that the Commissioner's Designee did not act arbitrarily or capriciously when it denied Pavement Restorations' petition to rehear based on Pavement Restorations' own failure to fully present the omitted evidence in its case in the first instance.

### CONCLUSION

Based on the forgoing, the judgment of the Gibson County Chancery Court is affirmed, and this cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Pavement Restorations, Inc., and its surety, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

- 14 -